# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

RODNEY FERRELL, an individual,
on behalf of himself and all others
similarly situated,

      Plaintiff,

                                   **CLASS ACTION COMPLAINT**

v.

MIAMI BEACH-MIAMI LGBT SPORTS           **DEMAND FOR JURY TRIAL**
CULTURAL LEAGUE, INC. a/k/a WORLD
OUTGAMES MIAMI 2017 a/k/a MIAMI OUT
GAMES, a Florida corporation,
THE GAY AND LESBIAN INTERNATIONAL
SPORT ASSOCIATION a/k/a GLISA
INTERNATIONAL, a Canadian corporation,
IVAN CANO, an individual, and KEITH
HART, an individual,

      Defendants.
_____/

### CLASS ACTION COMPLAINT

Plaintiff Rodney Ferrell, individually and as the representative of a class of similarly-situated persons, complains and alleges as follows:

### INTRODUCTION

1.      Beginning in or around March of 2016, and continuing until at least May 25, 2017, the 2017 World OutGames (the "OutGames") were globally promoted as a celebration of sports, culture and human rights. They were scheduled to begin on May 26, 2017 and continue for ten (10) days until June 4, 2017, in Miami, Florida. They were promoted through, among other things, direct e-mail solicitation and through the website http://www.outgames.org, which remains active today.

2.      Organizers promoted the OutGames by claiming it would feature "15,000 athletes in Miami."  Organizers promised participants the opportunity to compete in dozens of different sports, and that the events would "bring competitors world-wide to South Florida for the physical challenge and top notch competition, as well as comradery [sic] and friendship."   Indeed, while the athletic competition was to take place in Florida, the participants were overwhelmingly not from Florida.  Delegations representing different geographic regions were to travel to Florida to compete in this Olympic-style sporting event.

3.      Organizers also promised and promoted a three-day-long Global Conference on Human Rights featuring "over 50 speakers," a Cultural Program featuring "over 100+ events to provide a platform and opportunity for all to experience the richness and depth of the art, dance, music, literary and vocal music offerings from around the world," and an Opening Ceremony to include performances by celebrities such as Omar Sharif Jr., Tito Puente Jr., Envee, David Hernandez and Kristine W.

4.      In March of 2017, the OutGames had approximately two thousand (2,000) registrants, far too few to reach the promised 15,000 athletes in Miami, but organizers continued to promote a massive global sporting event.

5.      On or about March 24, 2017, Michael Goodman, a spokesperson for the OutGames, publicly stated that the OutGames would not be canceled and guaranteed that the cancelation of any particular sporting event would be announced by no later than April 1, 2017.

6.      No sporting event was canceled before April 1, 2017, or at any time prior to the opening date of the OutGames.

7.      In  fact,  in  a  public  interview  with  *Miami  Beach  Community  Newspapers*[1]
published three days before the first day of the OutGames, the founder of the event, Ivan Cano,
stated, among other things, that the OutGames would proceed and that (emphasis added):

- "With  registrants  from  **59 countries**,  World  OutGames  will  be  a  life-changing
  experience that will inspire, motivate and celebrate the human spirit";

- "Our Culture pillar is shaping up to be an amazing program.  Attendees will enjoy
  various cultural happenings **planned over the 10-day long event**. . .";

- "As we near the kick-off to this event, each day brings an exciting, new challenge.
  Thanks  to  the  help  of  our  staff,  volunteers,  individual  and  corporate  supporters
  and  the  City  of  Miami  Beach,  **the  momentum  continues  to  give  me  the
  certainty that this will be a successful, well-attended 10-day event**"; and

- "**World OutGames events start on May 26 and the opening ceremonies kick
  off our sporting events on Saturday, May 27**."

8.      But  the  OutGames  were  actually,  in  the  grand  tradition  of  the  notorious  Fyre
Festival,  both  a  sham  and  a  miserable  failure.    The  representations  of  the  OutGames  organizers
were  lies.    None  of  the  Defendants  had  the  capacity  to  host,  organize,  or  oversee  the  OutGames.
Each  of  Defendants  knew  the  OutGames  lacked  the  financial  capacity  to  cause  the  event  to
proceed.

9.      Then,  inevitably,  as  Defendants  had  known  for  months  would  happen  and  lied
about all along, on May 26, 2017, all of the sporting events except soccer, aquatics, and country
western dance were canceled.  The Opening and Closing Ceremonies were canceled.  The Global

---

[1] https://miamibeachvca.wordpress.com/2017/05/05/world-outgames-miami/

Conference on Human Rights was reduced to a single-day affair undeserving of that lofty name, and the Culture event was mostly scrapped.

10. This was communicated by the OutGames in a statement dated May 26, 2017, long after competitors had streamed into Miami to participate in the OutGames, which began that day.

11. The statement read, in its entirety: "It is with deep regret that due to financial burdens, World OutGames must cancel its sports programming and Opening and Closing Ceremony with the exception of soccer, aquatics and country western dance.  The Human Rights Conference and cultural programs will continue as planned.  We thank everyone who has supported the effort and apologize to those who will be impacted by this difficult decision."

12. This left thousands of competitors stuck with nonrefundable plane tickets, hotel reservations, expended vacation days, and travel reservations.  Other competitors had the same reservations, which while technically refundable were subject to penal cancellation provisions. All of these damages were caused by the competitors' justified reliance upon the misrepresentations, concealments and fraud of the Defendants.

13. The statement itself, couched as an explanation of events to OutGames registrants and attendees, was still a lie.

14. In reality, the OutGames was required to pay a $5,000 special event deposit to Miami Beach, but it never paid the deposit.  The OutGames was required to submit proof of insurance and permit applications to Miami Beach by no later than May 12, 2017, but it never did so.  As of the first day of the event, the OutGames did not have a special event permit, site plans for any of the 7 locations the OutGames purported to require, or insurance for the event. Each of these was necessary to the OutGames, but could not be procured.

15.     Every representation indicating that the OutGames would go forward was a lie.  It was impossible all along, and Defendants knew it.

16.     The final insult is that Defendants have made no attempt at paying refunds or compensation to OutGames registrants or attendees.  The damages registrants and attendees have suffered because of the cancellation of the OutGames far exceed the financial costs they have been forced to bear.

17.     Plaintiff brings this class action on behalf of all OutGames registrants and attendees defrauded, misled, and wronged by Defendants, and seeks damages in excess of $5,000,000 on behalf of himself and the Class.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which there are more than one hundred and fifty (150) members of the proposed class, members of the proposed class are citizens of states different from the states in which the defendants are citizens, other members of the proposed class are citizens or subjects of a foreign state while defendants are citizens of a U.S. state, and the aggregate amount in controversy, exclusive of interest and costs, exceeds five million dollars ($5,000,000).

19.     This Court has supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Defendants marketed to customers in this District.  Defendants succeeded in soliciting a large delegation of athletes from the Southern District of Florida to pay to (a) register for; (b) travel to; (c) train for; and (d) participate in the OutGames, with all such purchases entered into by that delegation made within

the Southern District of Florida. With absent class members scattered across the country –
delegations from a myriad of cities and states paid to (a) register for; (b) travel to; (c) train for;
and (d) participate in the OutGames based on claims made on the Internet – on information and
belief, one of the largest, if not the largest constellation of putative class members targeted and
affected by the conduct at issue, venue is proper under 28 U.S.C. § 1391(b)(2) .

21.   Defendants intentionally availed themselves to the laws within this District,
conducted substantial business in this District by marketing the OutGames within this District
and transacting business with participants residing in this District, and are subject to personal
jurisdiction in this District.

## PARTIES

22.   Plaintiff Rodney Ferrell is a resident of Los Angeles County, California, and a
citizen of the State of California.

23.   Defendant Miami Beach-Miami LGBT Sports & Cultural League, Inc. a/k/a World
OutGames Miami 2017 a/k/a Miami Out Games (the "OutGames Corp." or "OutGames") was, at
all times relevant to this action, a business entity incorporated under the laws of the State of
Florida.

24.   Defendant The Gay and Lesbian International Sport Association a/k/a GLISA
International ("GLISA") was, at all times relevant to this action, a business entity incorporated
under the laws of the Province of British Columbia in the foreign state of Canada.  GLISA
licensed the right to host the fourth OutGames event to OutGames Corp, then stood by as the
OutGames failed while concealing that failure from registrants and attendees until after the post-
opening cancellation of the OutGames.

25.     Defendant Ivan Cano is a resident of Miami-Dade County, Florida, and a citizen of the State of Florida. He served as the founder of OutGames Corp and as one of the public promotional spokespeople for the OutGames.

26.     Defendant Keith Hart is a resident of Miami-Dade County, Florida, and a citizen of the State of Florida who participated in the organization and production of the OutGames as the OutGames Corp.'s Chief Financial Officer.

27.     At all relevant times, each of the Defendants was acting as an agent, servant, employee, or representative of Defendants, and, in doing the things alleged in this Complaint, was acting within the course and scope of their agency, service, employment, or joint venture.

## GENERAL ALLEGATIONS

28.     Defendants aggressively – and cynically – marketed the OutGames as an elaborate global event in celebration of sporting competition, cultural sensitivity and harmony, and community.  It purported to star dozens of public intellectuals, numerous performing artists, an inclusive and celebratory opening and closing ceremony, and ten days of athletic competition in a swath of athletic events.

29.     Registration packages cost approximately $250.

30.     Plaintiff Rodney Ferrell, having reviewed these promotional materials, purchased a registration package, airfare to Miami, hotel reservations at sponsoring hotel and OutGames hotel headquarters The Ritz-Carlton South Beach, and rental car reservations for the approximate sum of $4,100.  Plaintiff also took a full week of vacation time from work.  He was registered for two tennis events.

31.     Plaintiff made the foregoing purchases and the vacation request between December of 2016 and May of 2017, in reliance upon the promotional representations and subsequent guarantees that the OutGames would proceed contained herein.

32.     Plaintiff enthusiastically trained for the tennis events in the months leading up to the OutGames.

33.     Plaintiff received the May 26, 2017 cancellation statement too late to cancel or miss his flight, and too late to cancel the foregoing reservations.  The tennis events Plaintiff was registered to compete in were canceled.  The Opening Ceremony was canceled.  Plaintiff had paid for a trip to Miami that he never would have paid for but for the lies and concealments of Defendants.

34.     Approximately 2,000 registrants and attendees faced the same fate.  Registered athletes were milling about the host hotel, the event sites, and the registration desk, dumbfounded that an event promoted to be beginning on May 26, 2017 was instead being **canceled** on May 26, 2017, just three days after Mr. Cano proudly touted the "momentum" and "certainty" of its success over ten days.

35.     By the time Plaintiff arrived in Miami, GLISA had released its own mea culpa press release to registered attendees.  GLISA was "shocked and disappointed to learn today that World OutGames Miami 2017 could not obtain permits to allow many of the planned activities to proceed."  GLISA was clear about throwing OutGames Corp under the bus: "Under the license agreement entered into with World OutGames Miami 2017 (the host city organization in Miami), they had sole and full responsibility for all planning and execution related to delivery of the event."  GLISA acknowledged that "[t]housands of participants ha[d] traveled to Miami from around the world to be a part of the 4th World OutGames."

36.     Finally, on June 9, 2017, GLISA issued a second public statement in which it stated that it "deeply regret[s] Miami OutGames organizers' failure to comply with the scheduled sports, and our own limitations with regards to local oversight over the delivery of such scheduled sports program."  GLISA explained that OutGames Corp and other Defendants had promised further answers and explanations regarding how OutGames came to be a fraudulent and spectacular failure, but not before the City had completed its "official audit of OutGames Corp"[2]

37.     GLISA had successfully run previous World OutGames in or about 2006, 2009, and 2013.  GLISA's and the previous World OutGames' reputation was known by Plaintiff, the Class, and certain segments of the public, which reputation was a significant factor in Plaintiff's and Class Members' decision to participate in the 2017 OutGames.  Plaintiff and the Class reasonably believed that the 2017 OutGames were operated by GLISA.

38.     GLISA received payments from OutGames Corp related to the 2017 OutGames.  OutGames Corp however, quickly fell behind in its payments to GLISA as OutGames Corp's financial situation became increasingly dire.  GLISA was thus fully aware of OutGames Corp's precarious financial position, yet it did nothing to inform Plaintiff or the Class Members of the potential problems with the 2017 OutGames.  Instead, GLISA continued to market and promote the 2017 OutGames and lead Plaintiff and the Class to believe that the 2017 OutGames would go ahead as planned.

39.     In addition to receiving payments for the 2017 OutGames, GLISA held itself out as an organizer of the World OutGames.  On information and believe GLISA approved, ratified, and/or was complicit in all relevant conduct of OutGames Corp, and exerted day-to-day control

---

[2]  *See* http://dermodynamics.com/GLISA/MiamiOutgamesAudit.pdf

over OutGames Corp  Moreover, OutGames Corp had actual and apparent authority to act as the agent of GLISA, and did so act.

40.     Like Plaintiff, the Class likewise registered for the OutGames and expended time and monies to travel to Florida only to find that the OutGames were canceled.

41.     Defendants Hart and Cano used the OutGames and OutGames Corp. for fraudulent purposes. Defendant Cano knew long before the cancellation of the OutGames was announced that the games could not and would not go forward.  Rather than share this information with Plaintiff and the Class, Defendant Cano withheld the information so that he could become personally enriched by the registration fees and other monies paid by Plaintiff and the Class to attend the OutGames.

42.     Similarly, Defendant Keith Hart, OutGames Chief Operating Officer, knew long before the cancellation of the OutGames was announced that the games could not and would not go forward.  Rather than share this information with Plaintiff and the Class, Defendant Hart withheld the information so that he could become personally enriched by the registration fees and other monies paid by Plaintiff and the Class to attend the OutGames.

43.     Defendants Hart and Cano ("Individual Defendants") failed to maintain sufficient, complete, and organized financial documentation for OutGames Corp, which on information and belief led to commingling of funds and the use of OutGames Corp funds for their own personal use, to the extent that the separate identities of the corporation and the individuals ceased to exist.  Moreover, the Individual defendants failed to adequately capitalize OutGames Corp. Accordingly, the corporate veil should be pierced.

44.    Individual Defendants, who were responsible for all financial matters related to OutGames Corp, spent almost half the company's revenues—more than $600,000—on consulting, advertising, and promotional fees.

45.    Individual Defendants were responsible for obtaining federal tax-exempt status for OutGames Corp, yet they failed to apply for, much less obtain, tax-exempt status for the organization.  Nevertheless, Individual Defendants continued to hold OutGames Corp out as a tax-exempt organization, intentionally misleading the public, donors, competitors, sponsors, and vendors.

46.    Individual Defendants organized and were personally enriched by so-called "fundraising" events that, in actuality, ended up costing the OutGames Corp money instead of generating revenue.   On information and belief, these events were never calculated to raise money for OutGames Corp but were, instead, held for the sole benefit of Individual Defendants and their friends, family, and acquaintances.

47.    Defendant Cano personally enriched himself by taking payments from OutGames Corp totaling more than $100,000.  These payments were not properly authorized, documented, or reported to relevant taxing authorities.  The payments Defendant Cano received were not legitimate payments for actual work performed, did not reflect the fair value of work performed, and were out of proportion to the operating budget of OutGames Corp  In addition to the payments received by Defendant Cano for supposed work performed, Defendant Cano also received kickbacks for helping to solicit donations.  These kickbacks were not approved by OutGames Corp's Board of Directors and were not disclosed to Plaintiff, the Class, donors, or the public.

48.     Defendant Cano personally enriched himself by taking payments from OutGames Corp as reimbursement for expenditures Cano made for purported OutGames Corp expenses. Defendant Cano and OutGames Corp failed to properly document or justify these expenses and, on information and belief, these expenses were not legitimate business expenses for OutGames Corp  On at least two occasions, Defendant Cano received *double* reimbursement for a claimed expense that resulted in an unjustified enrichment of Defendant Cano at the expense of OutGames Corp and its then and future creditors.

49.     Defendant Hart personally enriched himself by taking payments from OutGames Corp totaling more than $60,000 as reimbursement for expenditures Hart made for purported OutGames Corp expenses.  Defendant Hart and OutGames Corp failed to properly document or justify these expenses and, on information and belief, these expenses were not legitimate business expenses for OutGames Corp  Defendant Hart also made at least one short term loan to OutGames Corp, which loan was not an arms-length transaction.

50.     Defendant Hart was responsible for maintaining and reconciling OutGames Corp's bank accounts.  But Defendant Hart failed to reconcile the bank accounts for more than a year leading up to the cancelation of the 2017 OutGames.   Defendant Hart's mismanagement of OutGames Corp's funds and failure to perform his duty to oversee proper financial accounting was one direct cause of the failure of the 2017 OutGames.

51.     Defendant Hart was vested with unfettered authority to approve expenses and unilaterally sign checks on behalf of OutGames Corp    Had there been proper, independent oversight of OutGames Corp's finances, many of the issues outlined above could have been avoided.  Among other problems, Defendant Hart's sloppy and incomplete recordkeeping for

-12-

OutGames Corp make it difficult to determine the full extent of wrongdoing and self-dealing by Defendants.

52.     The Individual Defendants knew that the 2017 OutGames were doomed long before the events were canceled.  Yet they did nothing to inform Plaintiff, the Class, competitors, or anyone else about the problems facing the 2017 OutGames.  In fact, Individual Defendants continued to mislead Plaintiff, the Class, and the public by promoting the 2017 OutGames mere days before their cancelation.

<u>**CLASS ACTION ALLEGATIONS**</u>

53.     A class action is the proper form to bring Plaintiff's and the Class Members' claims under FRCP 23.  The potential class is so large that joinder of all members would be impractical. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

54.     Plaintiff brings this nationwide class action on behalf of himself and all members of the following class: All persons who registered for the 2017 World OutGames.

55.     This action satisfies all of the requirements of Federal Rules of Civil Procedure, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

56.     **Numerosity**: The Members of the Class are so numerous that joinder of all members is impractical. While the exact number of class members remains unknown at this time, upon information and belief, the class includes thousands of people. While the exact number is not known at this time, it is easily and generally ascertainable by appropriate discovery.

57.     **Commonality and Predominance:** There are many common questions of law and fact involving and affecting the parties to be represented.  These common questions of law

or fact predominate over any questions affecting only individual members of the Class.  Common questions include, but are not limited to, the following:

(a)  Whether Defendants knew that the 2017 OutGames would be canceled and/or severely limited prior to the date they announced such information;

(b)  When the Defendants knew that the 2017 OutGames would be canceled and/or severely limited;

(c)  Whether Plaintiff and the Class entered contracts with Defendants;

(d)  Whether Defendants breached the contracts;

(e)  Whether Defendants' conduct was unfair and deceptive; and

(f)  Whether Defendants were unjustly enriched.

58.  **Typicality:** Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct.

59.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

60.  **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class in that he has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class.

61.  Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class, and the infringement of the rights and the damages he has suffered are typical of other Class members.

62.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

63.    **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved herein.

64.    Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; as it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require.

65.    Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a corporate defendant.

66.    Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

67.    The nature of this action and the nature of laws available to Plaintiff make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because:

      a.   Defendants would necessarily gain an unconscionable advantage if they were allowed to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources;

      b.   The costs of individual suits could unreasonably consume the amounts that would be recovered;

      c.   Proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and

      d.   Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

## FIRST CAUSE OF ACTION

### UNJUST ENRICHMENT
**(By Plaintiff Individually and On Behalf of All Class Members
Against All Defendants)**

68.     Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as thought fully set forth herein.

69.     By registering for the OutGames and paying the registration fee, Plaintiff and the Class conferred a benefit on the Defendants and the Defendants had knowledge of such benefit.

70.     Defendants voluntarily accepted and retained the benefit conferred.

71.     Defendants acceptance and retention of the benefits conferred by Plaintiffs and the Class would be inequitable unless Defendants pay Plaintiff and the Class the value of the benefit.

## SECOND CAUSE OF ACTION
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA") – FLORIDA STATUTES § 501.201-.213
**(By Plaintiff Individually and On Behalf of All Class Members
Against All Defendants)**

72.     Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as thought fully set forth herein.

73.     Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiff in this case, from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

74.     Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

75.     Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. § 501.203(8).

76.    While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms. The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

77.    Defendants aggressively – and cynically – marketed the OutGames as an elaborate global event in celebration of sporting competition, cultural sensitivity and harmony, and community.  It purported to star dozens of public intellectuals, numerous performing artists, an inclusive and celebratory opening and closing ceremony, and ten days of athletic competition in a swath of athletic events.

78.    Plaintiff purchased his registration package, airfare to Miami, hotel reservations at sponsoring hotel and OutGames hotel headquarters The Ritz-Carlton South Beach, and rental car reservations for the approximate sum of $4,100, in reliance upon the promotional representations and subsequent guarantees that the OutGames would proceed contained herein.

79.    The OutGames was required to pay a $5,000 special event deposit to Miami Beach, but it never paid the deposit.  The OutGames was required to submit proof of insurance and permit applications to Miami Beach by no later than May 12, 2017, but it never did so.  As of the first day of the event, the OutGames did not have a special event permit, site plans for any of the 7 locations the OutGames purported to require, or insurance for the event.  Each of these was necessary to the OutGames, but could not be procured.

80.    Every representation indicating that the OutGames would go forward was a lie.  It was impossible all along, and Defendants knew it.

81.    Thus, inevitably, as Defendants had known for months would happen and lied about all along, on May 26, 2017, all of the sporting events except soccer, aquatics, and country

western dance were canceled.  The Opening and Closing Ceremonies were canceled.  The Global

Conference on Human Rights was reduced to a single-day affair undeserving of that lofty name,

and the Culture event was mostly scrapped.

82.     As a result of Defendants' deceptive and unfair practices, Plaintiff and thousands

of competitors were left stuck with nonrefundable plane tickets, hotel reservations, expended

vacation days, and travel reservations.

83.     Therefore, Defendants engaged in unfair and deceptive trade practices in violation

of Section 501.201 et seq., Fla. Stat.

84.     Pursuant to §§ 501.211(1) and 501.2105, Fla. Stat., Plaintiff and the Class are

entitled to recover from Defendants the reasonable amount of attorneys' fees Plaintiff has

incurred in representing his interests in this matter.

### THIRD CAUSE OF ACTION[3]
### BREACH OF CONTRACT
### (By Plaintiff Individually and On Behalf of All Class Members
### Against All Defendants)

85.     Plaintiff re-alleges and incorporates herein by reference each and every allegation

contained in the preceding paragraphs of this Complaint as thought fully set forth herein.

86.     By registering for the OutGames and paying the registration fee, Plaintiff and the

Class entered into a contract with Defendants to provide a world-class sporting and cultural

event, to include the sporting events Plaintiff and the Class registered for.

87.     Plaintiff and the Class provided consideration for Defendants' promise to provide

such an event and therefore performed their contractual obligations by paying the registration

fees for the OutGames event.

---

[3]         Plaintiff and the Class' contractual counts are pled in the alternative to
their claim for unjust enrichment.

88.     Defendants breached the contract by failing to provide Opening and Closing ceremonies, and all but 3 of the dozens of sporting events they were contractually obligated to provide.

89.     Plaintiff purchased his registration package, airfare to Miami, hotel reservations at sponsoring hotel and OutGames hotel headquarters The Ritz-Carlton South Beach, and rental car reservations for the approximate sum of $4,100 in reliance upon Defendants' performance of the contractual agreement between Plaintiff and Defendants, and was therefore harmed by their breach of that contract.

## FOURTH CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT
**(By Plaintiff Individually and On Behalf of All Class Members
Against All Defendants)**

90.     Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as thought fully set forth herein.

91.     A valid contract exists between Plaintiff and the Class by virtue of their registration, and payment of the registration fee, for the OutGames. In consideration for such payments, Defendants were obligated to present, administrator and operate the OutGames in the manner described publicly to Plaintiffs and the Class.

92.     Defendants breach the contract by failing to  present, administrator and operate the OutGames in the manner described publicly to Plaintiffs and the Class.

93.     Plaintiff and the Class conferred a benefit upon Defendants by registering for the OutGames and paying the registration fee.

94.     Defendants have knowledge of the benefit conferred by Plaintiff and the Class.

95.    Defendants voluntarily accepted these benefits that were conferred by Plaintiff and the Class.

96.    It would be inequitable for Defendants to retain the benefits provided by Plaintiff and the class because Defendants obtained such monies through unlawful and deceptive means.

97.    Defendants breach their implied contracts with Plaintiff and the Class by belatedly cancelling the events Plaintiff and the Class paid to attend.

98.    Defendants' conduct caused Plaintiff and the Class to suffer damages.

99.    Plaintiff's claim for breach of implied contract is pled in the alternative to his claims for breach of contract and unjust enrichment.

## FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
#### (By Plaintiff Individually and On Behalf of All Class Members
#### Against All Defendants)

100.   Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as thought fully set forth herein.

101.   By registering for the OutGames and paying the registration fee, Plaintiff and the Class entered into a contract with the Defendants to provide a world-class sporting and cultural event, to include the sporting events Plaintiff and the Class registered for.

102.   Plaintiff and the Class provided consideration for Defendants' promise to provide such an event and therefore performed their contractual obligations by paying the registration fees for the OutGames event.

103.   As demonstrated herein, Defendants consciously and deliberately interfered with Plaintiff and the Class's right to receive the benefits of that contract by failing to provide virtually any of the benefits of that contract and by cancelling the events Plaintiff and the Class paid to attend.

104.   Defendants' conduct caused Plaintiff and the Class to suffer damages.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, demands trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff, on behalf of himself and all others similarly situated, reserves the right to further amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Rodney Ferrell, individually and on behalf of all others similarly situated, prays for relief as follows:

(a) A declaration from this Court that this action is a proper class action, including certification of the proposed Class, appointment of Plaintiff as class representative, and appointment of Plaintiff's counsel as class counsel;

(b) A judgment awarding Plaintiff and the Class Members restitution, including, without limitation, disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful, unfair, and unlawful business practices and conduct;

(c) A judgment awarding Plaintiff and the Class Members actual compensatory damages;

(d) A judgment awarding Plaintiff and the Class Members exemplary and punitive damages for Defendants' knowing, willful, and intentional conduct;

(e) Pre-judgment and post-judgment interest;

(f) Attorneys' fees, expenses, and the costs of this action; and

(g) All other and further relief as this Court deems necessary, just, and

proper.

Respectfully submitted,

**WITES LAW FIRM**
Attorneys for Plaintiff and the Class
4400 North Federal Highway
Lighthouse Point, FL 33064
954-570-8989/954-354-0205 (fax)

By: /s/ Marc A. Wites
MARC A. WITES
Fla. Bar No.: 24783
mwites@wklawyers.com

**BEFFA LAW**
DARIN T. BEFFA
Cal. Bar No. 248768
D.C. Bar No. 983257
(*Pro Hac Vice Admission to be Sought*)
darin@beffalaw.com
445 South Figueroa Street, Suite 3100
Los Angeles, CA 90071
424-262-3332/424-217-4716 (fax)